UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

OHIO SECURITY INSURANCE COMPANY,

Plaintiff,

-against-

HISCOX INSURANCE COMPANY INC.,

Defendant.

-------------------------------------------------------------------------x

Civil Action No.

**COMPLAINT**

Plaintiff OHIO SECURITY INSURANCE COMPANY ("Ohio Security"), by its attorneys, JAFFE & ASHER LLP, as and for its Complaint against defendant HISCOX INSURANCE COMPANY INC. ("Hiscox"), alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a) by reason of the diversity of citizenship of the parties and the fact that the amount in controversy exceeds the sum of $75,000 exclusive of costs.

2. At all times hereinafter mentioned, Ohio Security was, and still is, a stock insurance company organized under the laws of the State of New Hampshire, with its principal place of business located at 175 Berkeley Street, Boston, MA 02116.

3. At all times hereinafter mentioned, Ohio Security was, and still is, an insurance company duly authorized to do business within the State of New York.

4. Upon information and belief, at all times hereinafter mentioned, Hiscox was, and still is, an insurance company organized pursuant to the laws of the State

of Illinois, with its principal place of business located at 30 N. LaSalle Street, Suite 1760, Chicago, Illinois 60602.

5. Upon information and belief, at all times hereinafter mentioned, Hiscox was, and still is, an insurance company duly authorized to do business within the State of New York.

## SUBSTANTIVE ALLEGATIONS

6. On or about September 8, 2021, Jordy G. Coronel Luna ("Luna") commenced an action entitled Jordy G. Coronel Luna v. Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors and Key Developers Inc., Index No. 522891/2021, which is pending in the Supreme Court of the State of New York, County of Kings (the "Underlying Action").

7. In the Underlying Action, Luna alleges that an agreement was entered into with Prime Structures LLC ("Prime"), whereby it was agreed that Prime was to perform certain construction/renovation/erection/demolition/repair work and related labor and service at the premises known as 224 West 124th Street, New York, New York (the "Project").

8. Upon information and belief, Luna was employed by TLP Construction as a worker on the Project.

9. Upon information and belief, Luna alleges that he was injured while stacking deck panels, when he pinched his fingers between two panel.

10. In the Underlying Action, Luna alleges that, on August 10, 2021, while in the course of his employment on the Project, he suffered bodily injury as a result of an accident.

11. In the Underlying Action, Luna alleges causes of action against Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, and Key Developers Inc. sounding in negligence and under N.Y. Labor Law §§ 200, 240, and 241.

12. On or about November 11, 2021, Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, and Key Developers Inc. impleaded Prime into the Underlying Action by the filing of a Third-Party Summons and Third-Party Complaint, alleging causes of action sounding in contractual indemnification, common law indemnification, contribution, and breach of contract for failure to obtain insurance coverage (this impleader is included within the definition of "Underlying Action").

13. On or about May 26, 2022, Prime impleaded Segue Services Inc. ("Segue") into the Underlying Action by the filing of a Second Third-Party Summons and Verified Second Third-Party Complaint, alleging causes of action sounding in contractual indemnification, common law indemnification, contribution, and breach of contract for failure to obtain insurance coverage (this impleader is included within the definition of "Underlying Action").

14. On or about July 13, 2022, Segue impleaded TLP Construction of NY LLC ("TLP") into the Underlying Action by the filing of a Third Third-Party Summons and Third Third-Party Complaint, alleging causes of action sounding in contractual

indemnification, common law indemnification, and contribution (this impleader is included within the definition of "Underlying Action").

15. On or about July 19, 2022, Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, and Key Developers Inc. impleaded Segue and TLP into the Underlying Action by the filing of a Fourth Third-Party Summons and Fourth Third-Party Complaint, alleging causes of action sounding in contractual indemnification, common law indemnification, contribution, and breach of contract for failure to obtain insurance coverage (this impleader is included within the definition of "Underlying Action").

16. Key Developers Inc., as Contractor, and Prime, as Subcontractor, on August 26, 2020, signed an agreement entitled Insurance Requirements Schedule in connection with work that Prime had agreed to perform at the Project (the "Contract").

17. The Contract provides, in relevant part, as follows:

> **2. Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, all entities the Owner is required indemnify and hold harm less for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A- VII" or better by AM. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.
>
> 2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured

coverage for the benefit of the Contractor, Owner and anyone else the contractor/owner is required to name (as set forth in the schedule below), and shall specifically include additional insured coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

18. The Contract requires Prime to maintain the following insurance:

a) Commercial General Liability using an industry standard unmodified "occurrence" coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;

19. The Contract contains a "List of Indemnified Parties and Additional Insureds" that includes the following: Carthage 124th L.P., Carthage Real Estate Advisors LLC, and Key Developers Inc.

20. The Contract was in effect at the time of the accident alleged in the Underlying Action.

21. Prime, as Contractor, and Segue, as Subcontractor, on December 8, 2020, signed an agreement entitled Subcontract Agreement Rider in connection with work that Segue had agreed to perform at the Project (the "Segue Contract").

22. The Segue Contract provides, in relevant part, as follows:

**2. Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, all entities the Owner is required indemnify and hold harm less for claims

arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A- VII" or better by AM. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the contractor/owner is required to name (as set forth in the schedule below), and shall specifically include additional insured coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

23. The Segue Contract requires Segue to maintain the following insurance:

a) Commercial General Liability using an industry standard unmodified "occurrence" coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;

24. The Segue Contract was in effect at the time of the accident alleged in the Underlying Action.

25. Segue, as Contractor, and TLP, as Subcontractor, on January 15, 2021, signed an agreement entitled Insurance Requirements Addendum in connection with work that TLP had agreed to perform at the Project (the "TLP Contract").

26. The TLP Contract provides, in relevant part, as follows:

**2. Insurance.** The Subcontractor shall procure and shall maintain until final acceptance of the Work, such insurance as will protect the Contractor, all entities the Contractor is required indemnify and hold harmless, the Owner, and their officers, directors, agents and employees, all entities the Owner is required indemnify and hold harm less for claims arising out of or resulting from Subcontractor's Work under this Contract Agreement, whether performed by the Subcontractor, or by anyone directly or indirectly employed by Subcontractor, or by anyone for whose acts Subcontractor may be liable. Such insurance shall be provided by an insurance carrier rated "A- VII" or better by AM. Best and lawfully authorized to do business in the jurisdiction where the Work is being performed.

2.1. The Subcontractor's insurance shall include contractual liability coverage and additional insured coverage for the benefit of the Contractor, Owner and anyone else the contractor/owner is required to name (as set forth in the schedule below), and shall specifically include additional insured coverage for completed operations. The insurance required to be carried by the Subcontractor and any Sub-Sub-Contractors shall be PRIMARY AND NON-CONTRIBUTORY. With respect to each type of insurance specified hereunder, the Contractor's and Owner's insurances shall be excess to Subcontractor's insurance.

27. The TLP Contract requires TLP to maintain the following insurance:

a) Commercial General Liability using an industry standard unmodified "occurrence" coverage form including contractual liability with minimum limits of $1,000,000 each occurrence, $2,000,000 aggregate with either per project or per location endorsement for property damage and bodily injury;

28. The TLP Contract was in effect at the time of the accident alleged in the Underlying Action.

29. Upon information and belief, in compliance with the TLP Contract, TLP obtained, and Hiscox issued, an insurance policy with Commercial General Liability

coverage, possibly policy No. UDC-4810153-CGL-21, that was in effect on August 10, 2021 (the "Hiscox Policy").

30. Upon information and belief, the Hiscox Policy has an Each Occurrence limit of $2 million and a General Aggregate limit of $2 million.

31. Upon information and belief, Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime qualify as and have been added as additional insureds on the Hiscox Policy for the claims alleged in the Underlying Action.

32. Ohio Security issued a Commercial General Liability policy, No. BKS (21) 62 39 20 97, with a policy period from December 4, 2020 to December 4, 2021, to Segue, as the first Named Insured (the "Ohio Security Policy").

33. The Ohio Security Policy has an Each Occurrence Limit of $1million.

34. The Ohio Security Policy contains an applicable excess "Other Insurance" provision that provides, in pertinent part, as follows:

> Regardless of the written agreement between you and an additional insured, this insurance is excess over any other insurance whether primary, excess, contingent or on any other basis for which the additional insured has been added as an additional insured on other policies.

35. Upon information and belief, as compared to the Ohio Security Policy, the Hiscox Policy has an applicable primary "Other Insurance" provision.

36. Upon information and belief, based on their respective "Other Insurance" provisions, the coverage provided by the Ohio Security Policy is excess to the coverage provided by the Hiscox Policy for any common additional insureds.

37. By letter dated March 22, 2022, Ohio Security tendered the defense and indemnity of Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., and Prime for the Underlying Action to TLP and Hiscox.

38. By Email dated April 11, 2022, Hiscox acknowledged receipt of the tender.

39. By Email dated June 23, 2022, regarding the contract with TLP, Ohio Security advised Hiscox that, "[t]here was an oral contract in place with your insured. The signed rider has the necessary insurance and indemnification requirements."

40. By Email dated September 30, 2022, Hiscox's Complex Claims Manager advised Ohio Security that, "I have reviewed the file and it appears that we have attempted to locate the insured but the number is no longer in service and the insured appears to be out of business. We will continue our attempts, however, with an oral agreement, it is likely the tender will not be accepted."

41. Hiscox has failed and refused to provide a written coverage position in response to the tenders.

42. Although duly requested, Hiscox, in breach of its obligations under the Hiscox Policy, failed and refused to acknowledge a duty to defend and indemnify Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime for the Underlying Action.

43. As a result of Hiscox's breach of its obligations, Ohio Security has been forced to drop down and provide a defense to Segue for the Underlying Action.

**AS AND FOR A FIRST CLAIM FOR RELIEF**

44. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "43" of this Complaint as if more fully set forth herein.

45. Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime qualify as additional insureds under the Hiscox Policy for the claims alleged in the Underlying Action.

46. Hiscox owes Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime a duty to defend and indemnify for the claims alleged in the Underlying Action.

47. Although duly demanded, Hiscox failed and refused to provide a primary defense and indemnification to Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime for the claims alleged in the Underlying Action.

48. Ohio Security seeks a determination of its rights with regard to the Hiscox Policy, including a declaratory judgment that Hiscox was and is required to defend and indemnify Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime for the Underlying Action under the Hiscox Policy, and that such coverage applies on a primary basis before coverage under the Ohio Security Policy applies to Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime.

49. Ohio Security has no adequate remedy at law.

**AS AND FOR A SECOND CLAIM**

50. Ohio Security repeats, realleges, and reiterates each and every allegation contained in paragraphs "1" through "49" of this Complaint as if more fully set forth herein.

51. As a result of the failure of Hiscox's failure to acknowledge that it owes a primary duty to defend Segue, Ohio Security has been required to pay for the defense of Segue for the Underlying Action.

52. As a result of the failure of Hiscox to acknowledge their primary duty to defend Segue for the Underlying Action, Ohio Security has incurred substantial attorneys' fees and other costs to defend Segue.

53. As a result of the foregoing, Ohio Security is entitled to a money judgment against Hiscox in an amount equal to what Ohio Security has incurred and will incur to defend and indemnify Segue for the Underlying Action, in an amount to be determined by the Court, plus interest.

**WHEREFORE**, plaintiff OHIO SECURITY INSURANCE COMPANY demands judgment as follows:

1. On the first claim for relief, a declaratory judgment determining the respective rights and obligations of plaintiff OHIO SECURITY INSURANCE COMPANY and defendant HISCOX INSURANCE COMPANY INC. with respect to the liability insurance coverage obligations of each for Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque and Prime for the Underlying Action, including a declaratory judgment that defendant HISCOX

INSURANCE COMPANY INC. is required to defend and indemnify Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime for the Underlying Action, and that such coverage would apply on a primary basis before coverage under the Ohio Security Policy applies to Carthage 124th L.P., Carthage Real Estate Advisors LLC, Carthage Realty Advisors, Key Developers Inc., Seque, and Prime;

2. On the second claim for relief, a money judgment in favor of plaintiff OHIO SECURITY INSURANCE COMPANY and against defendant HISCOX INSURANCE COMPANY INC. in an amount to be determined by the Court, plus interest, and

3. Granting plaintiff recovery of the costs and disbursements of this action, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
December 21, 2022

Yours, etc.,

JAFFE & ASHER LLP

By:__________________________

Marshall T. Potashner, Esq.
Attorneys for Plaintiff
OHIO SECURITY INSURANCE COMPANY
445 Hamilton Avenue, Suite 405
White Plains, New York 10601
(212) 687-3000